UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENCHMARK CONSULTING, INC.,

    Plaintiff,

v.                                             Case No. 8:18-cv-3134-T-24CPT

USAA CASUALTY INSURANCE
COMPANY,

    Defendant.
_____/

**O R D E R**

Before the Court are the *Plaintiff's Amended Motion to Strike and/or Discharge Kovar Law Group's [KLG] Charging Lien* (Doc. 37); KLG's *Motion to Enforce Charging Lien* (Doc. 39); and the responses in opposition to same (Docs. 38, 40, 41).[1] For the reasons discussed below, the Plaintiff's motion is granted in part, and KLG's motion is denied.

I.

In November 2018, Plaintiff Benchmark Consulting Inc., doing business as Castle Roofing and Construction (Castle), initiated this action in state court against

---

[1] One of these responses was filed by Defendant USAA Casualty Insurance Company (USAA), which, as noted *infra*, has since been dismissed from this case.

Defendant USAA.  (Docs. 1, 1-1).  Castle was represented at the time by Sean P. Saval, an attorney at KLG.  Approximately one month later, USAA removed the action to this Court, invoking the Court's diversity jurisdiction.  (Doc. 1).

As the litigation progressed, the relationship between KLG and Castle deteriorated, ultimately resulting in Saval withdrawing as Castle's attorney in June 2019.  (Docs. 14, 15).  With the Court's permission, attorney Lee Smith of Smith, Kling & Thompson, P.A. (Smith Thompson) assumed representation of Castle.  *Id.*

Roughly one week prior to Saval's withdrawal, KLG filed a Notice of Attorney's Charging Lien, claiming that it had not received full payment from Castle for the legal services it had rendered and the costs it had advanced.  (Doc. 13).  The Notice further stated:

> By filing and service of this Notice of Attorney's Charging Lien in this case, [KLG] places CASTLE, its current legal counsel, the Defendant, and its legal counsel on notice of [KLG's] claim of charging lien, and requests that [KLG] be advised of any settlement, trial, or judgment. Additionally, [KLG] requests that the Court reserve jurisdiction in any final judgment entered to adjudicate the amount of [KLG's] charging lien.  **No distribution of any such recovery should be made without satisfying the foregoing lien. . . .**

*Id.* at 3 (emphasis in original).

In late September 2019, Castle—through its new counsel, Smith Thompson—filed a notice advising the Court that it had settled its dispute with USAA and requested that the "Court retain original jurisdiction to resolve any issues with respect to the pending charging lien filed by" KLG.  (Doc. 23).  Based on that notice, the Court entered an Order dismissing the case without prejudice and affording the parties

the right either to re-open the action within sixty days upon a showing of good cause, or to submit a stipulated form of final judgment. (Doc. 24). The Court's Order, however, did not explicitly address or retain jurisdiction as to the matter of KLG's charging lien.

During the ensuing sixty-day period, Castle and USAA worked to finalize and execute their settlement agreement. (Doc. 82 at 3). In early October 2019, while Castle and USAA were preparing the release documents in connection with their settlement, Saval informed USAA's counsel in writing that: (1) KLG objected to any settlement that did not include its attorney's fees and costs being paid in full; (2) KLG's incurred attorney's fees and costs were $9,348.50 and $430.55, respectively; and (3) KLG would accept the sum of $9,029.05 as full satisfaction of its charging lien. *Id.* USAA did not respond to KLG's correspondence. *Id.*

Two weeks later, Castle and USAA signed their settlement agreement, which provided that USAA would pay Castle $100,000 for a release of any and all claims, including attorney's fees, costs, and extra-contractual damages. *Id.* at 4. The agreement required USAA to pay $85,000 of the $100,000 figure to Castle and the remaining $15,000 to Smith Thompson and KLG to cover all attorney's fees and costs owed to these two law firms, including those reflected in KLG's charging lien. *Id.* The agreement also stated that Castle would indemnify and hold USAA harmless for any and all claims relating to such fees and costs. *Id.*

In late November 2019, Castle moved to re-open the case for purposes of either striking or discharging KLG's charging lien. (Doc. 27). KLG opposed Castle's motion as premature (Doc. 28), and, following a hearing on the matter, the Court denied the motion without prejudice and directed the parties to confer in an effort to resolve their fee dispute (Doc. 36).

When Castle and KLG were unable to reach such a resolution, the Court scheduled an evidentiary hearing on the matter in late June 2020. Two weeks prior to that proceeding, the Court conducted a pre-hearing conference, at which the parties agreed to USAA's dismissal from the case in light of its tender of the above described settlement amounts. (Doc. 76). KLG also agreed at the conference to file amended exhibit and witness lists to ensure that its evidence was not cumulative. In addition, the day before the hearing, the parties filed a joint statement of agreed-upon facts (Doc. 82), as well as a stipulation waiving any attorney-client privilege and confidentiality concerns related to their dispute (Doc. 83).

At the hearing, KLG called its owner and principal, Jeremy "Jay" Kovar, who testified to, *inter alia*, his law firm's fee agreement with Castle, the type of work KLG performed for Castle, and the reasons KLG withdrew from representing Castle in this action. (Doc. 87). Upon the completion of Kovar's testimony, the parties stipulated that KLG's remaining witness, Austin Fowler (who is an employee at KLG) would corroborate Kovar's testimony relative to KLG and Castle's fee arrangement. *Id*. In addition to this testimony, the parties admitted a total of twenty-one exhibits (Docs.

4

85, 86), including emails sent by KLG to Castle's owner, James Lathrop, regarding KLG's termination of its relationship with Castle.

The Court has carefully reviewed the evidence tendered at the hearing as well as the parties' submissions, and the matter is now ripe for resolution.

II.

A.

The Court has supplemental jurisdiction over this charging lien matter pursuant to 28 U.S.C. § 1367(a).  *See Shackleford v. Sailor's Wharf, Inc.*, 770 F. App'x 447, 449, n.1 (11th Cir. 2019) (per curiam) (finding the district court had supplemental jurisdiction over a charging lien following the conclusion of the underlying admiralty action); *Moreno Farms, Inc. v. Tomato Thyme Corp.*, 490 F. App'x 187, 188 (11th Cir. 2012) (per curiam) (noting that the "existence of an attorney's lien against a party's recovery in a lawsuit is part of the same case or controversy as the underlying lawsuit") (citations omitted).

In adjudicating attorney charging liens, the federal courts apply the law of their home state.  *See Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 660 (11th Cir. 2013) (per curiam); *In re Washington*, 242 F.3d 1320, 1322-23 (11th Cir. 2001) (per curiam).   Under Florida law, the "preferred method" of enforcing an attorney's charging lien is through a summary proceeding.  *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986); *see also New Eng. Mut. Life Ins. Co. v. Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A.*, 690 So. 2d 1354, 1356 (Fla. Dist. Ct. App. 1997) ("A summary proceeding represents a speedy and simple

5

method to set the amount of the charging lien."). A product of Florida common law, summary proceedings are equitable in nature, *Nichols v. Korelinger*, 46 So. 2d 722, 724 (Fla. 1950), and are subject to a well-developed body of case authority, *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom,* 428 So. 2d 1383, 1384-85 (Fla. 1983); s*ee also Austin Laurato, P.A. v. United States*, 539 F. App'x 957, 961 (11th Cir. 2013) (per curiam) ("The requirements for imposing an attorney's charging lien are not codified in a Florida statute, but rather are governed by case law.") (citing *Smith*, 486 So. 2d at 561). Given their equitable character, there is no right to a jury trial in such proceedings. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1352 (11th Cir. 2019).

B.

An attorney seeking to impose a charging lien must show: (1) there was an express or implied contract between the attorney and the client; (2) the parties had an express or implied understanding that the attorney's fees would be paid out of the recovery; (3) that the client avoided making payment or there was a dispute as to the amount of the fees; and (4) the attorney provided timely notice of his charging lien claim.[2] *Smith*, 486 So. 2d at 561; *Baucom*, 428 So. 2d at 1385.

---

[2] In addition to these requirements, there is case authority that, because a charging lien "attach[es] only to the tangible fruits of the [attorney's] services," those services must "produce a positive judgment or settlement for the client." *Walther v. Ossinsky & Cathcart, PA*, 112 So. 3d 116, 117 (Fla. Dist. Ct. App. 2013) (citing *Correa v. Christensen*, 780 So. 2d 220 (Fla. Dist. Ct. App. 2001)).

6

There is no disagreement here that KLG has satisfied the third and fourth requirements. As to the third requirement, it is evident from the record that Castle has avoided payment of the contested fees and that it disputes whether and the extent to which KLG is entitled to a fee award. With respect to the fourth requirement, it is likewise clear that KLG provided timely notice of its fee claim by filing its Notice of Charging Lien (Doc. 13) before the case settled and was dismissed. *See Smith*, 486 So. 2d at 561 ("In order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the original action.") (citations omitted); *see also Baucom*, 428 So. 2d at 1385 ("There are no requirements for perfecting a charging lien beyond timely notice.").

The parties do quarrel, however, as to the first and second requirements—namely, whether there was an express or implied contract between KLG and Castle and whether they had an express or implied understanding that KLG's attorney's fees would be paid out of Castle's recovery. Each of these issues is addressed in turn.

1. *Express or Implied Contract between KLG and Castle*

According to Kovar's testimony (and as the parties stipulate), KLG began representing Castle in insurance-related matters in approximately 2017 or 2018 pursuant to an oral contingency fee agreement. (Docs. 82, 87). Under that arrangement, rather than collect its attorney's fees and costs directly from Castle, KLG maintained a record of the time it expended on each case and recouped its fees and costs from the insurer pursuant to Florida Statute § 627.428. That statute requires an insurer to pay the insured "a reasonable sum as fees or compensation for the insured's

7

or beneficiary's attorney prosecuting the suit" when the insured obtains a judgment or decree against the insurer. Fla. Stat. § 627.428(1). In instances where Castle settled with the insurer, the parties negotiated the reasonable fees and costs owed to KLG as part of the parties' resolution of the matter. According to Kovar, Castle never paid KLG's attorney's fees, nor did KLG ever receive fees where it did not obtain a favorable outcome for Castle.

The problem with this arrangement, as Kovar candidly acknowledged during his testimony, is that an oral contingency fee agreement violates Rule 4-1.5 of the Rules Regulating the Florida Bar. Rule 4-1.5 requires that contingency fee agreements be: (1) reduced to writing; (2) signed by the client; and (3) executed by a lawyer for the lawyer or for the law firm representing the client. Rule 4-1.5(f)(2), Rules Regulating the Florida Bar. Castle contends that KLG's admitted violation of this rule means that its oral fee agreement is void and unenforceable. While KLG concedes the oral agreement is a nullity, it asserts that it may still prevail on its charging lien under the theory of quantum meruit. (Doc. 87 at 38).

Both parties rely on the Florida Supreme Court's decision in *Chandris, S.A. v. Yanakakis*, 668 So. 2d 180 (Fla. 1995) in support of their respective positions. In *Chandris*, the court held that "a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees in order to be enforceable." 668 So. 2d at 185-86. Applying a prior version of Florida's Code of Professional Responsibility, *id.* at 185 n.3, the court reasoned that the requirements for contingency fee contracts "are necessary to protect the public interest" and are thus

8

"not enforceable by the member of The Florida Bar who has violated the rule," *id.* at 185-86. The court added, however, that "[e]ven though a member of The Florida Bar cannot claim fees based upon a noncomplying agreement, the attorney would still be entitled to the reasonable value of his or her services on the basis of quantum meruit." *Id.* at 186 n.4 (citing *Rosenberg v. Levin*, 409 So. 2d 1016 (Fla. 1982)); *see also Lackey v. Bridgestone/Firestone, Inc.*, 855 So. 2d 1186, 1188 (Fla. Dist. Ct. App. 2003) (noting that, under Florida law, an attorney who has no contingent fee agreement with a client may still recover on a quantum meruit basis) (citations omitted); *King v. Young, Berkman, Berman & Karpf, P.A.*, 709 So. 2d 572, 574 (Fla. Dist. Ct. App. 1998) (per curiam) (finding that when a fee agreement between attorney and client is void because it fails to comply with the Rules Regulating the Florida Bar, the attorney is still entitled to recover on the basis of quantum meruit), *review denied*, 725 So. 2d 1111 (Fla.); *Salter v. St. Jean*, 170 So. 2d 94, 95-96 (Fla. Dist. Ct. App. 1964) (per curiam) (observing in dicta that, even where a fee agreement is void, an attorney is still allowed a fee based on quantum meruit).

  Admittedly, *Chandris* was not a charging lien dispute but rather stemmed from a tortious interference with business relations case. *Yanakakis v. Chandris, S.A.*, 9 F.3d 1509, 1510 (11th Cir. 1993), *certified question answered*, 668 So. 2d 180 (Fla. 1995). That said, while there is no binding authority directly addressing the issue, the general propositions espoused in *Chandris* have been applied to charging lien disputes. *See, e.g., Everett v. City of St. Petersburg*, 2017 WL 1434785, at *5 (M.D. Fla. Apr. 24, 2017) (finding charging lien enforceable despite the fact that the fee agreement at issue did

not satisfy Rule 4-1.5, noting the Rule "is not inconsistent with the holding in *Chandris* that an attorney seeking fees who has a noncomplying agreement must pursue the claim on a quantum meruit theory").

A party seeking to recover in quantum meruit must show that it had an implied contract with the party for whom it performed services. *See 14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 881 n.1 (Fla. Dist. Ct. App. 2010); *Corn v. Greco*, 694 So. 2d 833, 834 (Fla. Dist. Ct. App. 1997) (per curiam) ("Quantum meruit relief is founded upon the legal fiction of an implied contract."). A contract implied in fact "exists where the parties have made an agreement of sorts which falls short of being an enforceable, true contract." *14th & Heinberg*, 43 So. 3d at 881 n.1; *see also Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997) (en banc), *as modified on clarification* (June 4, 1997). As one court observed:

> Common examples of contracts implied in fact are where a person performs services at another's request, or where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid. In these circumstances, the law implies the promise to pay a reasonable amount for the services.

*Equity Contracting Co.*, 695 So. 2d at 386 (internal citations and quotation marks omitted).

10

Here, Castle does not present, nor does the Court find, any reason to believe that KLG did not have an implied contract with Castle for the payment of the services it rendered to Castle. Thus, the Court finds that KLG has satisfied the requirement of an express *or implied* contract between it and Castle.[3]

2. *Express or Implied Understanding KLG's Fees to be Paid Out of Castle's Recovery*

On the question of whether there was an express or implied understanding for payment of attorney's fees out of Castle's recovery, KLG and Castle again diverge. This time, however, Castle has the better argument.

As both sides acknowledge, the law in Florida has long been that an attorney's voluntary withdrawal from representation before the occurrence of the contingency contemplated by the parties' agreement forfeits that attorney's claim to compensation. *Faro v. Romani*, 641 So. 2d 69, 71 (Fla. 1994). In recognition, however, that withdrawal is not always an attorney's choice but his duty to the court, the Supreme Court of Florida has carved out exceptions to this general rule where the client's conduct would make "the attorney's continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule of the Rules Regulating The Florida Bar." *Id*. Under such circumstances, "th[e] attorney may be entitled to a fee when the contingency of an award occurs." *Id.*; *see also DePena v. Cruz*, 884 So. 2d 1062, 1063-64 (Fla. Dist. Ct. App. 2004).

---

[3] The Court addresses in Section C, *infra*, Castle's related argument that quantum meruit cannot be awarded in this case given the lack of proof on the reasonable value of the services KLG provided.

11

As reflected on the docket in this case, KLG withdrew as counsel for Castle pursuant to a stipulation for substitution of counsel filed by KLG and Smith Thompson approximately three months prior to the settlement. (Docs. 14, 15, 23). That stipulation provided no basis for KLG's withdrawal, however. (Doc. 14).

At the hearing, both parties tendered evidence on the reasons behind KLG's withdrawal, including a series of emails between KLG and Castle dated May 21, 2019, which was approximately one month prior to KLG's termination of its relationship with Castle. In the first of these emails, a KLG paralegal Deanna Firlik emailed Castle's owner, Lathrop, under the subject line "Final Invoice—Lathrop Criminal/family matter,"[4] stating:

> I have attached the final invoice for the work done in your family/criminal law case. *Jay [Kovar] has requested that I convey the following to you.* The invoice reflects the work that Andy [Popp] has done for your criminal case. *If this invoice is paid in full by Friday, May 24th Jay [Kovar] has advised that we will continue to do the work on your other cases as we have been. If you do not want to pay the invoice then he has advised that we need to end our business relationship and you will need to immediately find a new attorney to handle all of your cases going forward.*

(Doc. 85-1) (emphasis added).

In a subsequent email sent approximately twelve minutes later under the same subject line, Kovar advised Lathrop, among other things, that he (Kovar) had been

---

[4] The "criminal/family matter" referenced in the subject line stemmed from Lathrop's arrest in or around April or May 2019 on unspecified charges. According to Kovar, Lathrop's family retained KLG to secure Lathrop's release on these charges, and the KLG attorney who handled the matter was Andy Popp.

12

"told" Lathrop "refused" the above offer.[5]  (Doc. 85-2).  Following another email in which Kovar informed Lathrop that if he "slander[ed Kovar's] name in the slightest, [Kovar would] spend the rest of [his] life coming after" Lathrop (Doc. 85-3), Kovar emailed Castle:

> Since we have irreconcilable differences and Jim [Lathrop] keeps insulting myself, my firm, and my staff, you need to find a new attorney asap for all your cases.
>
> Dean Makris, Michael Germain, Harvey Cohen, Steve Batisti, Guy Gilbert, and Mark Nation all do this kind of work.
>
> We will be placing fee liens for the work we have already done on every case.
>
> Do not contact me, do not contact my firm or any of my employees, unless it is about transferring your cases to a new firm.

(Doc. 85-4); *see also* (Doc. 82 at 2).

At the hearing, Kovar testified that he did not instruct Firlik to convey the message in the first of these emails, and that the "irreconcilable differences" to which he referred in the last email pertained to an ethical conflict, which prevented KLG from continuing to serve as Castle's counsel. (Doc. 39 at 10; Doc. 87).  Regarding the ethical conflict, Kovar explained that KLG became aware that Castle was using the firm's services to commit insurance fraud and decided it could no longer represent the company under Rule 4-1.16(a)(4) of the Rules Regulating the Florida Bar.  That rule provides that an attorney must terminate his representation of a client if "the client

---

[5] Firlik was also included on this email.  KLG did not call Firlik as a witness at the hearing.

persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent, unless the client agrees to disclose and rectify the crime or fraud[.]" Rule 4-1.16(a)(4), Rules Regulating the Florida Bar.

Kovar provided two reasons during his testimony why KLG believed that Castle was engaged in fraud: (1) Castle hired and utilized an in-house attorney who KLG believed was not able to practice law because the attorney did not belong to a Florida law firm; and (2) Castle was waiving insurance deductibles and fraudulently claiming to have conducted interior work that it had not performed, both in violation of Florida insurance law. With respect to the latter reason, Kovar added that, because KLG was filing complaints on Castle's behalf based on allegedly phony insurance claims, KLG's services were being used to facilitate the claimed fraud. Neither of Kovar's reasons survive scrutiny.

Starting with the first reason, even accepting KLG's assertion that Castle's in-house counsel was not legally practicing law in the State of Florida, KLG presents no basis to conclude that such conduct involved KLG's services and thus would trigger its obligations under Rule 4-1.16(a)(4).

As for the second reason, it is not sufficiently supported by the evidence. To begin, there is no indication that Castle's alleged fraud involving the waiving of deductibles and the claiming of non-existent interior work was present in the instant case. Moreover, the evidentiary weight of the above contemporaneous emails between KLG and Castle on the matter of KLG's withdrawal overcomes whatever persuasive value Kovar's testimony may have. As such, the Court finds that KLG

fails to meet its burden of demonstrating that its withdrawal was involuntary. Because KLG terminated its representation of Castle before the settlement occurred (i.e., the contingency), KLG forfeited its claim to compensation. *Faro*, 641 So. 2d at 71.[6]

C.

Even assuming *arguendo* that KLG satisfies all four of the above requirements for a charging lien, it fails to provide evidence upon which the Court can base a quantum meruit award predicated on the theory that it was constructively discharged by Castle due to the above ethical conflict.

It is well settled that an attorney who performed services on behalf of a client on a contingency fee basis and who is discharged before the contingency is accomplished may recover for services only in quantum meruit. *Sohn v. Brockington*, 371 So. 2d 1089, 1093 (Fla. Dist. Ct. App. 1979). If the discharge was without cause, the compensation to which the attorney is entitled is the reasonable value of the services rendered not to exceed the maximum amount set forth in the fee agreement. *Rosenberg*, 409 So. 2d at 1021; *see also Everett*, 2017 WL 1434785, at *3 (citing *Kushner v. Engelberg, Cantor & Leone, P.A.*, 699 So. 2d 850, 851 (Fla. Dist. Ct. App. 1997); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So. 2d 947, 954-55 (Fla. Dist. Ct. App. 1993)). The reasonable value of the services is based on the "lodestar"

---

[6] In light of this finding and the finding below, the Court need not consider the issue of whether KLG's services "produce[d] a positive judgment or settlement for" Castle. *Walther*, 112 So. 3d at 117.

factors—namely, the time reasonably devoted to the representation multiplied by a reasonable hourly rate—as well as all pertinent factors surrounding the professional relationship. *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 368-69 (Fla. 1995) (noting these factors may include those enumerated in Rule 4-1.5(b) of the Rules Regulating the Florida Bar,[7] along with the fee agreement itself, the reason the attorney was discharged, the actions taken by the attorney or the client before discharge, and the benefit actually conferred on the client). "The determination as to which factors are relevant in a given case, the weight to be given each factor, and the ultimate determination of the amount to be awarded are matters within the sound discretion of the trial court." *Id.* at 369.

---

[7] The Rule 4-1.5(b) factors are:
    (A) the time and labor required, the novelty, complexity, difficulty of the questions involved, and the skill requisite to perform the legal service properly;
    (B) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
    (C) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
    (D) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
    (E) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
    (F) the nature and length of the professional relationship with the client;
    (G) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
    (H) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
Rules Regulating the Florida Bar 4-1.5(b).

Here, KLG fails to demonstrate the reasonable value of the services it provided or the costs it incurred while representing Castle in this action. Other than stating the total amount it claims it is owed (Doc. 82 at 3), KLG does not specify the time its attorneys or staff expended on the case or the hourly rates it charged. Nor does it present any billing records or testimony detailing the discrete tasks the KLG attorneys conducted. The only evidence or argument on the subject was that KLG filed a complaint on Castle's behalf, engaged in some preliminary discovery and case management efforts, and arranged the mediation conference. Although Kovar testified to having a general knowledge that such acts were performed, he offered no specifics. KLG also neglected to tender any records or testimony regarding the expenses it paid. Without further evidence on these matters, the Court is unable to determine the reasonable value of the services that KLG rendered to Castle under a theory of quantum meruit or the costs it claims it is entitled to recoup.[8] *See Lackey*, 855 So. 2d at 1188-89 (finding evidence insufficient to award quantum meruit where attorneys failed to provide evidence of the time expended and hourly rates).

---

[8] KLG's counsel submitted at the hearing that she was under the impression the hearing was only intended to address the firm's entitlement to a charging lien. The basis for this mistaken impression, however, is unclear to the Court. At no point did the Court indicate that the hearing would be so limited. Nor did either party specifically request such a bifurcated resolution of this charging lien matter at the pre-hearing conference or at any other time.

III.

Accordingly, in light of the above, it is hereby ORDERED:

1. *Plaintiff's Amended Motion to Strike and/or Discharge Kovar Law Group's Charging Lien* (Doc. 37) is granted to the extent that KLG's charging lien (Doc. 13) is discharged; and

2. *Kovar Law Group's Motion to Enforce Charging Lien* (Doc. 39) is denied.

DONE and ORDERED in Tampa, Florida, this 24th day of September 2020.

*/s/ Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record